# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| CHESTER CLARK TISCHER II | ) | |
| and | ) | |
| JENNY LEA TICHSER, | ) | |
| Individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO: 1:12-cv-4185- CAP** |
| BANK OF AMERICA | ) | |
| CORPORATION d/b/a | ) | |
| BANK OF AMERICA N.A. AND | ) | |
| BANK OF NEW YORK MELLON | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Chester Clark Tischer II and Jenny Lea Tischer (hereinafter referred to as "Plaintiffs") hereby brings their claims for wrongful foreclosure pursuant to O.C.G.A 23-2-114 against Bank of America Corporation D/B/A/ Bank of America, N.A. ("BOA") and Bank of New York Mellon ("Mellon and collectively hereinafter "Defendants"). On information and belief, Plaintiffs hereby allege the following in support of their claims:

## PARTIES

### 1.

Plaintiffs are residents of Cobb County, Georgia. Their residence is located at: 4191 Longview Cove Roswell Georgia, 30075.

### 2.

Defendant BOA is a foreign corporation authorized to do business in the State of Georgia and will receive notice of this filing through the Court's CM/ECF system

### 3.

Defendant Mellon is a foreign corporation that is not registered with the Georgia Secretary of State but is transacting business on regular basis in the State of Georgia. It too will receive notice of this filing through the CM/ECF system.

## JURISDICTION AND VENUE

### 4.

Jurisdiction and venue are due to Defendants assent to the jurisdiction and venue in this Court based on their removal to this Court.

## OPERATIVE FACTS

### 5.

Plaintiffs purchased a home located at 4191 Longview Cove Roswell Georgia, 30075. This property was secured by a mortgage now purportedly held by Mellon.

### 6.

Though the property is purportedly owned by Mellon, Plaintiffs have never had any contact with Mellon. Plaintiffs initially obtained the loan for the home from Countrywide Home Loans, LLC ("Countrywide"). On information and belief, BOA bought the remnants of Countrywide around the time that Countrywide was being shut down by the Federal Government for being undercapitalized and for making fraudulent loans.

### 7.

As part of BOA's acquisition of Countrywide, Plaintiffs believe that BOA packaged a number of the high risk loans which it acquired from Countrywide and somehow convinced Mellon to acquire them. It is difficult for Plaintiffs to further specify how the loan in questions ended up belonging to Mellon, as Plaintiffs have literally never spoken to or interacted with Mellon other than receiving a foreclosure notice that contained Mellon's name and information. Plaintiffs

therefore allege that BOA was acting as the authorized and actual agent for Mellon throughout all of the actions described below.

8.

In any event, Plaintiffs operated in good faith through all of these events and timely made their mortgage payments to Mellon through BOA, assuming BOA was actually remitting payment to Mellon.

9.

Plaintiffs have always been in the construction business. Plaintiffs' construction business was more highly specialized than most. Specifically, Plaintiffs concentrated in modifying new and existing buildings to help accommodate persons with disabilities. This required specialized licensing and expertise. This business pursuit also required Plaintiffs to be more conservative than most persons involved in the construction industry. As a result, when the industry began to deteriorate, Plaintiffs began to contact BOA's predecessor Countrywide to discuss a potential modification. Plaintiffs contacted Countrywide approximately 6 to 7 times after August 2008 in order to discuss a modification. All of these attempts were unsuccessful and resulted in no modification. This was likely because Countrywide was failing at its own business during this same time period.

10.

In the meantime, Plaintiffs continued to make their best efforts to stay current with their mortgage and were successful in doing so. Nonetheless Plaintiffs business continued to suffer and Plaintiffs continued to lose monies from the operation of the business. Despite these hardships, Plaintiffs continued to make their mortgage payments on a timely basis and keep current on their mortgage.

11.

In January or February, Plaintiffs became aware that Countrywide had failed and that BOA had taken possession of the servicing of their loan. Plaintiffs believe that Mellon took ownership of the loan on or about January or February 2009 along with the transition of Countrywide's portfolio to BOA. All communications received by Plaintiffs from that point forward were labeled as being from BOA, though, on information and belief, from this point forward, BOA was acting with the apparent and actual authority of Mellon

12.

In 2009 Plaintiffs began to suffer more financial hardship, though paying their mortgage remained their top priority. Plaintiffs implemented even more cost saving measures and cut out various vacations and other activities due to the dire situation. Plaintiffs then began receiving mailings and seeing commercials on

television regarding home modification programs, including commercials from their new lender BOA.

13.

In late February 2009 Plaintiffs were in dire straits and decided to begin seeking out one of home loan modifications mentioned above. To that end Plaintiffs contacted BOA and inquired about a possible home loan modification. BOA told Plaintiffs that they were "pre-approved" for a modification. BOA, on information and belief, did so with the apparent and actual authority of Mellon, who was the actual lender at this point in time. BOA requested that Plaintiffs fill out home loan modification paperwork. This paperwork was burdensome and vague, but Plaintiffs, believing they had no choice, complied. The first set of "loan modification paperwork" was provided to BOA, and also to Mellon as BOA was acting as the agent for Mellon. The first set of loan modification papers was provided to BOA, and therefore to Mellon in March 2009

13.

Despite their financial hardships, Plaintiffs continued to timely make their mortgage payments in March, April and May of 2009.

14.

Plaintiffs continued to diligently inquire about the status of their modification throughout March and April of 2009. They were told that the modification was in process and that they should receive an answer shortly. An answer was not received until early May of 2009.

15.

When the answer was finally received in May 2009, it was a negative one. Plaintiffs were told that they had been disqualified from the modification program because they were current on their mortgage. Plaintiffs were told to resubmit the paperwork for the modification. Plaintiffs did so in a timely fashion. Plaintiffs continued to make their mortgage basis on a timely basis and the paperwork was submitted to BOA, and through BOA to Mellon, in June 2009.

16.

Plaintiffs diligently continues to inquire regarding the mortgage modification from June until late July 2009. Through this roughly six week inquiry, Plaintiffs made weekly contact with BOA, and through BOA, Mellon. Finally, in mid-July 2009, BOA, soeaking on behalf of Mellon, told Plaintiffs that they had been disqualified from the modification program because they were current on their loan and "only borrowers in arrears" were eligible for the advertise modifications.

17.

BOA, and by proxy Mellon, then asked Plaintiffs to resubmit the paperwork again.  Despite having dealt with this issue for over one year, Plaintiffs complied. In late July they once again submitted the "modification paperwork."  At all times, Plaintiffs continued to make timely payments on their mortgage.

18.

This time, BOA, and through its agency relationship Mellon, responded in a more time fashion.  In August 2009, Plaintiffs were again told that they were ineligible for a modification because they were current on their payments. However, the phone representative in this particular instance decided to attempt to be of assistance.  The phone representative suggested that Plaintiffs not pay their mortgage for August until after the date that it was due.  Plaintiffs' payment was due on the tenth.  The representative of BOA, and through its agency relationship Mello, ordered Plaintiffs to not pay their mortgage until after the 15th, at whoch point they should contact BOA, and through its agency relationship, Mellon, and offer to pay and also inquire as to the status of the modification.  Plaintiffs followed this advice and withheld payment until after the 10th of August, 2009.

19.

Plaintiffs then called, BOA, and through its agency relationship Mellon, on the 15th of August and were informed that because they had made payment, on the 15th. Plaintiffs were then directed, by BOA and Mellon that they should attempt To withhold payment until after the 10th of September and attempt, once again, to qualify for the loan modification. The rationale for this course of action was the same as above; Plaintiffs would then technically be "late" on their payment and therefore technically eligible for modification.

20.

On September 15, 2009 Plaintiffs again called BOA, and though their agency relationship Mellon, and inquired about the loan modification. Plaintiffs also tendered payment of their mortgage, including any late fees at that time.

21.

Within a week of this payment, Plaintiffs were once again told by BOA and Mellon that they were ineligible for a modification due to the fact that Plaintiffs were "current" on their loan.

22.

Plaintiffs continued to repeatedly call BOA, and through their agency relationship Mellon, and inquire about the modification. Finally, on October 12, 2009, a representative of BOA, and through its agency relationship, Mellon, that

Plaintiffs should simply not pay their mortgage payment for three months and that they would then be given the requested modification. Plaintiffs were doubtful, because at this point they had been dealing with BOA and Mellon for over one year. Plaintiffs requested that BOA and Mellon provide this offer in writing. In response BOA, on behalf of Mellon, stated that they "do not put anything in writing" but that this instruction was being "noted in [Plaintiffs'} file.

23.

Plaintiffs contemplated the right course of action and doubted that BOA or Mellon would follow through on their promises. Nonetheless, Plaintiff Chester Tischer called BOA to inquire about this course of action. BOA, on behalf of Mellon assured Plaintiffs that if they missed the next three months mortgage payments that they would be given the requested modification. Indeed, Plaintiff Tischer inquired to make sure that the instruction to miss three payments had been noted in Plaintiffs file yet again. BOA, on behalf of Mellon, read the instruction "off the screen" and assured Plaintiffs that this was an established and routine course of action in pursuing a modification.

24.

Plaintiffs, feeling that they had no choice, did not pay their mortgage payments from November 2009 until January 2010. Plaintiffs then faithfully resumed making the mortgage payments in February 2010.

25.

Despite the promises and representations made by BOA and Mellon, neither Defendant provided the promised mortgage modification. Plaintiffs never missed after the January 2010 payment. Plaintiffs paid the mortgage from February 2010 until October 2012, when BOA, on behalf of its client Mellon, began threatening foreclosure.

## COUNT I

## FRAUD

26.

Defendants have a legal obligation not to make intentional omissions or misrepresentations of fact when doing business in the State of Georgia.

27.

Nonetheless, BOA and Mellon made several misrepresentations and omissions of material fact, both orally and in writing in their own records to induce them to miss three mortgage payments so that BOA and Mello could foreclose on Plaintiffs' home. These include, but are not limited to:

> (1)   BOA and Mellon's predecessor Countrywide sending literature to Plaintiffs' home stating that they were "prequalified" for a mortgage, when in fact Plaintiffs were

not and Countrywide, BOA and Mellon had no intention of granting Plaintiffs a modification;

(2)     BOA and, through its agency relationship, Mellon, informing Plaintiffs that they were prequalified for a modification in March 2009, and asking them to submit paperwork to achieve this modification, when neither BOA or Mellon had any present intention of providing a modification to Plaintiffs;

(3)      BOA, and through its agency relationship, Mellon, informing Plaintiffs that they were prequalified for a modification in June 2009, and asking them to submit paperwork to achieve this modification, when neither BOA or Mellon had any present intention of providing a modification to Plaintiffs;

(4)      BOA and, through its agency relationship, Mellon, informing Plaintiffs that they were prequalified for a modification in August 2009, and asking them to submit paperwork to achieve this modification, when neither BOA or Mellon had any present intention of providing a modification to Plaintiffs;

(5)     BOA, and through its agency relationship, Mellon, by informing
        Plaintiffs that if they missed three payments beginning in
        November 2009 and continuing through February 2010, in
        conjunction with yet another set of paper work would qualify
        Plaintiffs for a modification, when neither BOA, nor Mellon had
        any present intention of providing Plaintiffs with a modification,
        and were instead intentionally causing Plaintiffs to miss payments
        with the intention of accepting payments thereafter for a period of
        over two years thereafter and then foreclosing

(6)     BOA and Mellon Deceptively and intentionally telling Plaintiffs on
        October 12, 2009 that they must pay their mortgage payments from
        November 2009 through February 2010 in order to receive a
        modification, when neither BOA or Mellon had any intention of
        providing a modification to Plaintiffs and were instead attempting
        to use these missed payments to foreclose on Plaintiffs ; and

(7)     Deceptively and intentionally reaffirming to Plaintiffs  during the
        first week of November 2009 that Plaintiffs could not pay
        mortgage payments from November 2009 through February 2010
        if they wished to achieve a modification, when neither BOA or
        Mellon had any intention of providing a modification to Plaintiffs

and were instead attempting to use these missed payments to
foreclose on Plaintiffs

28.

BOA and Mellon fraudulently induced Plaintiffs to miss their mortgage payments by promising to provide a loan modification without a present intent to perform and knowing that BOA and Mellon would not provide the promised modification.

29.

Plaintiffs reasonably and justifiably relied on Defendants verbal and written misrepresentations to its detriment, and missed the three mortgage payments and then resumed paying them for almost three years. This reliance was reasonable based on the nature of the relationships between the parties.

30.

Plaintiffs' reliance on Defendants fraudulent representations have proximately caused Plaintiffs substantial injury in an amount to be proven at trial. Additionally, Defendants have acted willfully, recklessly and/or maliciously, and with specific intent to cause Plaintiffs harm. Plaintiffs are entitled to recover compensatory and punitive damages, as well as their attorney's fees, from Defendants.

# COUNT II

## WRONGFUL FORECLOSURE- INJUNCTIVE RELIEF AND DAMAGES

## FOR SLANDER OF TITLE

31.

BOA and Mellon have a statutory duty to exercise good faith in exercising all foreclosures. Additionally, BOA and Mellon have a duty to deal fairly with Plaintiffs relating to any foreclosure and has a duty to deal fairly with Plaintiffs when exercising the power of foreclosure. *See* O.C.G.A. § 23-2-114. More particularly, Plaintiffs' claims are in the nature of an injunction prohibiting Plaintiffs' from foreclosing and damages arising from the wrongful attempted foreclosure as most recently recognized by Judge Tottenberg in <u>Williamson v. Bank of America N.C.</u>, 2011 U.S. Dist. LEXIS 155582 (citing *Curl v. Fed. Sav. & Loan*, 241 Ga. 29, 244 S.E.2d 812, 812 (Ga. 1978); *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 443 S.E.2d 837, 838 (Ga. 1994); *West v. Koufman*, 259 Ga. 505, 384 S.E.2d 664, 665 (Ga. 1989); *Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 107 Ga. App. 463, 130 S.E.2d 518, 520 (Ga. Ct. App. 1963)).

32.

BOA and Mellon breached both of those duties to Plaintiffs by inducing them to miss three mortgage payments by promising a modification if they did so,

accepting payments from Plaintiffs for almost three years thereafter, and now attempting to foreclose on their home.

33.

This breach caused severe damage to Plaintiffs, and threatens to cause additional harm.

34.

Thus, Plaintiffs are entitled to have the foreclosure proceedings halted. Additionally, Plaintiffs' are entitled to compensatory damages arising from their mental and emotional anguish and as well as punitive damages due to the malicious vindictive and willful nature of their actions pursuant to In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors pursuant to O.C.G.A. §51-12-6(b)

<b><u>COUNT III</u></b>

<b><u>ATTORNEY'S FEES AND REASONABLE COSTS OF LITIGATION</u></b>

35.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

36.

Pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to recovery of their expenses of litigation, including, but not limited to, attorneys' fees.

WHEREFORE, Plaintiff prays that this Court:

(a)     award compensatory and punitive damages in an amount to be determined in the enlightened conscience of a jury;

(b)     halt the foreclosure of Plaintiff's home and enjoin Defendant from foreclosing on plaintiffs' home;

(c)     award Plaintiff attorney's fees and reasonable costs of litigation; and

(d)     for such other and further relief as this Court deems just and equitable.

Plaintiff hereby demands a TRIAL BY JURY.

Respectfully submitted this 29th day of July, 2013.

/s/W. Anthony Collins, Jr.
W. Anthony Collins, Jr.,
Georgia Bar Number:  141712
Smith and Collins, Attorneys, LLC.
8565 Dunwoody Place Suite B
Atlanta, Georgia 30350
404-806-7180